1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELONZA JESSE TYLER,

11          Plaintiff,                 No. CIV S-06-0861 JAM GGH P

12      vs.

13   DIANA K. BUTLER, et al.,

14          Defendants.               FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court is defendants' motion for summary judgment, filed on December

19   10, 2008, to which plaintiff filed an opposition on January 7, 2009, after which defendants filed a

20   reply, on January 14, 2009.

21   Amended Complaint

22          This court has previously set forth the allegations of the amended complaint, as

23   follows herewith, with any necessary modification.  This action proceeds on the amended

24   complaint, filed on 11/22/06,[1] against defendants employed at Folsom State Prison (FSP): former

25   _____

26          [1] The original complaint was filed on 4/21/06; certain claims and a defendant were
     dismissed with leave to amend by Order, filed on 10/24/06 (docket # 5).

1

Warden Diana K. Butler; Correctional Sgt. S. Johnson; Correctional Officer (C/O) Tuggle; C/O

D. Ramirez; and C/O P. Cordero.  Plaintiff contends that on September 4, 2003, while he was

working at his assigned work station in the culinary department, waiting for a large dishwashing

tank to fill with hot water, under the direct supervision of defendants Tuggle, Ramirez, Cordero

and Johnson, a high pressure hot water hose became unattached from the tank, lifting up and out

of control, spraying scalding water directly at plaintiff, and at another inmate, named Smith.

Amended Complaint (AC), p. 8.  Plaintiff (and the other inmate) moved quickly to avoid being

scorched by hot water from the errant hose, whereupon plaintiff slipped on the wet floor and fell,

injuring his left knee, causing immediate pain and swelling.  Id.  Plaintiff contends that Tuggle,

Ramirez, Cordero and Johnson failed to supervise the inmates assigned to the scullery area and

that the unsupervised inmate filling the washing tank left his work area.  Id.  Plaintiff alleges that

defendants knowingly failed to install a high pressure hot water hose safety device to secure the

high pressure hot water hose inside the dishwashing tank.  Id., at 9.  This omission, in

combination with the failure to supervise inmates assigned to use this equipment, made serious

injury or death more probable.  Id.

Plaintiff alleges that defendants' were deliberately indifferent to a hazardous

working condition in violation of the Eighth Amendment and the injury that resulted caused an

increase in his pain and suffering because plaintiff suffers from severe osteoarthritis in both

knees and has had two ineffective surgeries to his left knee with a full knee replacement

scheduled.  AC, pp. 9-10.  He claims to have lost use of his legs and suffered an overall

deterioration of his health.  Id., at 9.  Plaintiff also contends that defendants acted in reckless

disregard for his safety.  Id., at 10.[2]  Plaintiff seeks general, special and punitive damages.  See

---

[2] In the court's prior rendering of plaintiff's allegations, it was indicated that plaintiff also
appeared to be making a supplemental state law negligence claim; however, upon a subsequent
review of the amended complaint, although to some extent interchangeably alleging the
"deliberate indifference" and the "negligence" of defendants, plaintiff expressly states that he is
proceeding only pursuant to 42 U.S.C. § 1983, is alleging solely a violation of his "federally
secured civil rights" and does not set forth any separate state law negligence claim.  See

1   <u>Order</u>, filed on September 24, 2008 (docket # 28), pp. 1-2.

2   <u>Motion for Summary Judgment</u>

3           Defendants move for summary judgment, seeking judgment as a matter of law,

4   contending that they were not deliberately indifferent to plaintiff's health and safety; that they did

5   not require plaintiff to work in an unsafe environment; that they did not have a duty to inspect or

6   repair the area or equipment plaintiff contends was defectively maintained; that they did not have

7   notice of any potential risk to plaintiff's health or safety and did not intentionally disregard any

8   such risk, if it existed.  Motion for Summary Judgment (MSJ), pp. 1-7.

9           *Legal Standard*

10          Summary judgment is appropriate when it is demonstrated that there exists "no

11   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

12   matter of law."  Fed. R. Civ. P. 56(c).

13          Under summary judgment practice, the moving party

14          always bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
15          pleadings, depositions, answers to interrogatories, and admissions
            on file, together with the affidavits, if any," which it believes
16          demonstrate the absence of a genuine issue of material fact.

17   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

18   P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

19   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

20   depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment

21   should be entered, after adequate time for discovery and upon motion, against a party who fails to

22   make a showing sufficient to establish the existence of an element essential to that party's case,

23   and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322, 106 S. Ct. at 2552.

24   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

25   _____

26   <u>Amended</u> <u>Complaint</u>, pp. 1, 4, 9-11.

1  necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment

2  should be granted, "so long as whatever is before the district court demonstrates that the standard

3  for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at

4  2553.

5        If the moving party meets its initial responsibility, the burden then shifts to the

6  opposing party to establish that a genuine issue as to any material fact actually does exist. See

7  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

8  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

9  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

10  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

11  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

12  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

13  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

14  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

15  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

16  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

17  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

18        In the endeavor to establish the existence of a factual dispute, the opposing party

19  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

20  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

21  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

22  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

23  genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

24  56(e) advisory committee's note on 1963 amendments).

25        In resolving the summary judgment motion, the court examines the pleadings,

26  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On May 24, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

*Undisputed/Disputed Facts*

Although neither defendants nor plaintiff has explicitly set forth the underlying facts of plaintiff's claim as undisputed, it does not appear to be in dispute that plaintiff was working in the Folsom State Prison kitchen on September 4, 2003, when he experienced a fall, injuring himself, possibly seriously, the result of plaintiff having slipped on a floor that was wet as he moved quickly to escape the hot water spraying in his direction from a hot water hose which had become detached from a dishwashing tank.

Relying on their almost wholly unvarying declarations, defendants set forth the following as undisputed facts: 1. Defendants did not have the responsibility to inspect or make repairs to equipment in the kitchen area.  Butler Dec., ¶ 4; Johnson Dec., ¶ 5; Ramirez Dec., ¶ 5; Cordero Dec., ¶ 5; Tuggle Dec., ¶ 5.  2.  Defendants were not aware of any alleged defect in the dishwasher or the hot water hose.  Butler Dec., ¶ 4; Johnson Dec., ¶ 4; Ramirez Dec., ¶ 4;

5

Cordero Dec., ¶ 4; Tuggle Dec., ¶ 4.  3. Defendants were not aware of any alleged OSHA[3]

violations.  Butler Dec., ¶ 4; Johnson Dec., ¶ 4; Ramirez Dec., ¶ 4; Cordero Dec., ¶ 4;  Tuggle

Dec., ¶ 4.  4.  Defendants were not aware that any safety device could or should have been put on

the dishwasher hose.  Butler Dec., ¶ 4; Johnson Dec., ¶ 5; Ramirez Dec., ¶ 5; Cordero Dec., ¶ 5;

Tuggle Dec., ¶ 5.  5.  Defendants were generally aware that the floor could be wet but that

condition could not be eliminated even with the exercise of due care.  Johnson Dec., ¶ 5;

Ramirez Dec., ¶ 5; Cordero Dec., ¶ 5; Tuggle Dec., ¶ 5.  6. The condition of the floor was open

and obvious to everyone in the area, including plaintiff.  Johnson Dec., ¶ 5; Ramirez Dec., ¶ 5;

Cordero Dec., ¶ 5; Tuggle Dec., ¶ 5.  Defendants' separate statement of undisputed facts (DUF)

in support of MSJ, pp. 1-2.

To dispute any representation that defendants did not know of the risk he faced

working in the culinary area, plaintiff relies on a copy of a form for plaintiff's alleged injury of

September 4, 2003, addressed to the State Compensation Insurance Fund,[4] evidently prepared, at

least in part, and signed, by defendant Johnson on September 23, 2003, wherein defendant

Johnson states, in response to a question on the form regarding whether corrective actions have

been taken: "Methods for reducing accidents due to slipping in the Culinary are being discussed."

Plaintiff's Declaration in Opposition (hereafter, Plt.'s Opp. Dec.), p. 4, Exhibit (Ex.) A.   Plaintiff

alleges that defendant Johnson's statements in his declaration are "perjured," in light of

plaintiff's Ex. A, when he states that he neither specifically recalls plaintiff or any incident

involving plaintiff's injury in the kitchen.  Plt.'s Opp. Dec., p. 5.  Plaintiff also avers that

defendant Johnson's response to a request for admission,[5] that he could not recall any complaints

---

[3] Occupational Safety and Health Administration.

[4] Plaintiff refers to his exhibits as "self-authenticating " referring to Fed. R. Evid. 902, which is not apposite in the context of the document copies he submits.  Opp., p.3.  Thus, plaintiff's exhibits are not formally authenticated.

[5] Plaintiff's requests for admission are actually interrogatories.  In an Order, re: motion to compel, as defendants noted, the court directed defendants to treat them as interrogatories.

of "unsafe slippery conditions in the culinary department" at Folsom State Prison, (FSP) is in essence a disingenous attempt to escape responsibility and part of defendants' alleged on-going conspiracy to cover up their awareness of the workplace hazards. Id., citing Ex. B, p. 3. To DUF 3, that defendants were unaware of OSHA violations, plaintiff argues that the previously referenced form apparently filled out, at least in part, by defendant Johnson shows that defendants were aware of "recognized hazards," when he referenced methods for reducing accidents in the culinary department being under discussion. Plt.'s Opp. Dec., p. 6. Plaintiff also points to defendant Johnson's admission that he had himself experienced slippery conditions in the FSP culinary department. Id., Ex. B, p. 3.[6] In the reply, defendants observe that the worker's compensation form indicates that there were no witnesses to the alleged occurrence and that in plaintiff's portion of the form, plaintiff states that Johnson had asked if he wanted to see the MTA, but that "I told him I would wait and try and walk off the pain." Reply, p. 3. Defendants also point out that the document itself contains the statement "Filing of this report is not an admission of liability," rendering it of no evidentiary value. Defendants also state that the document was not presented to defendant Johnson until September 23, 2003, and that the statement upon which plaintiff so heavily relies – that methods for reducing accidents in the kitchen were under discussion – does not indicate knowledge of defendant Johnson or any other defendant of prior accidents, but rather only that after plaintiff's reported fall, that staff had some discussions about what they might be able to do to reduce future accident potential. Reply, p. 3. Of course, defendants' interpretations of the statement are mere argument, as no supplemental affidavit has been submitted warranting how the line referring to discussions of methods for

---

[6] The response is actually illegible in the copy provided to the court, but defendants do not dispute it in their reply. More troubling is why it appears that counsel for defendants and not defendant Johnson signed Johnson's supplemental responses; in other words, defendant Johnson has not affirmed the responses under penalty of perjury. At Ex. E, plaintiff has submitted defendant Tuggle's supplemental responses, again signed by his counsel and not verified by the defendant himself. Plaintiff raises no objections on this basis and perhaps verifications followed. However, the insufficiency of having only defendant's counsel's signature (and not even under penalty of perjury) undermines the credibility of any of these responses.

1    reducing accidents should be interpreted by the individual who apparently wrote it or affirming

2    the date on which the form was submitted to him.

3                Plaintiff points to defendant Tuggle's declaration, wherein he concedes awareness

4    that the kitchen floor near the sinks and dishwasher can become wet.  Id., defendant Tuggle's

5    Dec., ¶ 5.  (Plaintiff's Exs. C through E in Opp. to the motion consist of defendants' declarations

6    submitted in support of the summary judgment motion and will simply be identified as the

7    respective defendants' declarations).   Indeed, along with defendant Tuggle, defendants Johnson,

8    Ramirez and Cordero all set forth as an undisputed fact that the kitchen floor could become wet.

9    Johnson Dec., ¶ 5; Ramirez Dec., ¶ 5; Cordero Dec., ¶ 5.  Defendants Tuggle, Johnson, Ramirez

10   and Cordero go on to say that it is "impossible to entirely eliminate such conditions even through

11   the exercise of due care" and that a wet floor may sometimes be "a normal, expected and readily

12   observable condition that is open and obvious to anyone working in or observing the area."   Id.

13   Plaintiff, however, construes the defendants Tuggle, Johnson, Ramirez and Cordero's having

14   conceded that they knew that the floor near the sinks and dishwasher could be wet as an

15   admission by all defendants that they knew of and ignored a "recognized hazard" in violation of

16   OSHA.  Plt.'s Opp. Dec., p. 6.

17               Plaintiff's Ex. F is a copy of defendant Tuggle's supplemental responses to

18   plaintiff's first requests for admission.  Plaintiff relies on those responses to demonstrate that

19   defendant Tuggle admits to having worked in the FSP kitchen in 2003, to being assigned to

20   supervise, to having general knowledge that the kitchen is a location where persons may well

21   have sustained injuries,[7] to having observed inmates washing dishes and filling up dishwashing

22   tanks.[8]  Plt.'s Opp. Dec., p. 9, Ex. F.  Plaintiff also contends that defendant Tuggle does not deny

23

24        [7] Wherein he specifically references as examples, "cuts, burns, etc."  Ex. F, response to
     no. 4.

25        [8] Defendant Tuggle actually states while he does not recall specific instances of inmates
     washing dishes and filling up tanks that such is a part of the daily kitchen activity and he has
26   observed inmates working generally.  Ex. F, response to no. 7.

that inmates are required to manually hold the high pressure hot water hose down in the tank and that he admits that he would consider it to be a safety hazard for an inmate assigned to fill up the dishwashing tank to leave the high pressure hot water hose unattended when the tank was full. While it is true that Tuggle does not deny that inmates are required to manually hold the high pressure water hose down, neither does he confirm it, instead averring that he is unaware of any particular policy or procedure for filling tubs for dishwashing purposes. Ex. F, response to no. 8. Plt.'s Opp. Dec., pp. 9-10, Ex. F. Defendant Tuggle indicates in his responses that he does not ever recall supervising plaintiff directly (which, of course, does not mean he never did, nor does his response clarify whether or not he had any supervisory duties on the day at issue for the inmates in the kitchen), and his responses also indicate that he does not recall ever witnessing anyone being injured in the kitchen or any specific instance of such injuries. Ex. F, responses to nos. 1-4. Defendant Tuggle also asserts that he does not recall any complaint about unsafe slippery conditions in the kitchen other than those contained in the instant action. Ex. F, response to no. 6. In response to whether he allows inmates to leave their work assignments without permission, defendant Tuggle states:

> For inmates under my direct supervision, as a matter of general policy, no. However, there are many exceptions such as bathroom breaks, illness or I myself may be called away performing other tasks. I cannot watch all of the inmates or staff all the time. Also, other staff may give permission to inmates to leave their areas for various purposes with or without my permission. It would just depend upon the particular circumstances.

Ex. F, response to no. 9.

Defendant Tuggle flatly denies ever having seen the subject high pressure water hose coming out of the dishwashing tanks in the manner that apparently occurred in this instance. Ex. F, response to no. 11.

Plaintiff contends that defendants failed to keep the workplace free of "recognized hazards" in accordance with OSHA, failed to provide him with any safety training or protective rubber boots, but knowingly assigned him to an area that they recognized could not be kept

9

1   entirely safe, i.e., in recognizing that the floor could be wet, which plaintiff argues posed a

2   substantial risk of serious harm or death.  Plt.'s Opp. Dec., pp. 6-7.  He further argues that

3   defendants' assertion that they are not required to make plaintiff's work area entirely safe

4   signifies that they compelled him to work in a place where his health was endangered,

5   referencing the assertion of defendants that the wetness of the floor could be a "normal, expected

6   and readily observable condition that is open and obvious to anyone working in or observing the

7   area." Plt.'s Opp. Dec., p. 7; see, e.g., defendant Johnson Dec., ¶ 5 and DUF 6.   Plaintiff also

8   argues that defendants do not deny that the high pressure dishwashing hose was not secured with

9   an (undescribed) safety device, instead maintaining that they indicate they were not aware they

10   were under any duty to secure it.  Plt.'s Opp. Dec., p. 7.

11            Ex. G is a copy of the written responses by defendant Johnson to plaintiff's first

12   request for production of documents.[9]  Ex. H[10] is a copy of plaintiff's request for an extension of

13   time to file an opposition to a previously filed  motion for summary judgment, averring that he

14   had yet to be served with additional discovery responses ordered by the court (which resulted in

15   the prior motion for summary judgment being vacated without prejudice to re-notice once

16   defendants' filed proof of service of the further discovery[11]).  At Ex. I, plaintiff produces

17   voluminous evidence as to the seriousness of the injury that occurred as a result of the incident

18   that is the subject of this action.  In addition to medical records indicating the extent of his injury,

19   physical therapy treatments, the fact that he has since needed a wheelchair, he includes notes of a

20   _____

21   [9] Once again, the responses are only signed by defendant's counsel, which is only
    appropriate to the extent that objections are posited.  No verification is attached to any response,
22   and to the extent that defendant warrants that he does not have the requested document within his
    possession, custody or control, etc., it is required.

23   [10] Buried within this exhibit is a putative cross-motion for summary judgment, which
    plaintiff calls a "counter-motion," but only near the end of an unsigned declaration.  Therein,
24   plaintiff fails to set forth any undisputed facts entitling him to judgment as a matter of law.  Ex.
    H, p. 4.

25   [11] See Order, filed on December 3, 2008 (docket # 33).  The proof of service of the
26   supplemental responses was filed by defendants on December 9, 2008 (docket # 34).

March 2, 2006, psychiatric visit (on a form entitled "Case Manager Progress Note for Major

Depressive Disorder"), wherein he indicated that he suffered chronic pain as a result of his knee

injury.  Plt.'s Ex. I, No. 12, p. 5.  These exhibits support plaintiff's contention that his injury was

serious and had a longterm impact, whether in and of itself, or in exacerbating any previous

condition.  Plaintiff's Ex. J includes various grievances plaintiff filed at FSP regarding the injury

he sustained as a result of slipping on the wet floor in the culinary department, the pain, mobility

problems and medical treatment (or lack thereof) that has ensued, the claimed on-going wet

condition of the floors in the FSP kitchen area which still poses dangers and for which condition

plaintiff requests the prison to provide safety measures to prevent injuries from slipping (but

which form of injunctive relief is not sought in the underlying instant complaint, which seeks

only money, including punitive, damages).[12]  Also included in this exhibit is a form indicating

that plaintiff, at least as of February 19, 2004, was found "permanently mobility impaired" by a

condition of his lower extremities due to his knee pain and because the knee "goes out on him."

Plt.'s Ex. J, p. 9.   Ex. K begins with a copy of a 602 appeal against defendant Cordero, dated

August 13, 2003, which predates the incident at issue herein and does not appear to have any

relevance to it, concerning as it does plaintiff's claim that another, less experienced, inmate was

assigned to a position that plaintiff had been performing in an unofficial capacity.  Although

plaintiff contends that Ex. K put defendant Cordero on notice as to the constantly slippery and

unsafe kitchen floor conditions (plt.'s Dec. Opp., p. 13, Ex. K), this representation is belied by

the substance of the grievance itself that plaintiff has provided, which is focused on plaintiff's

seniority being passed over by defendant Cordero claiming that this defendant was acting in

retaliation for plaintiff's having filed previous grievances against him.

---

[12] In any event, had plaintiff requested prospective injunctive relief in his complaint in the form of requiring more precautions with regard to reducing the wetness of the FSP kitchen floor, which he did not, his subsequent transfer California Medical Facility would have mooted any such claim.  See Sample v. Borg, 870 F.2d 563 (9th Cir. 1989); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986); see also Reimers v. Oregon, 863 F.2d 630, 632 (9th Cir. 1988).

1        *Eighth Amendment Legal Standard*

2        "Prison officials have a duty to ensure that prisoners are provided adequate

3    shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217

4    F.3d 726, 731 (9th Cir. 2000), citing, inter alia, Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct.

5    1970 (1994).  When an inmate has been deprived of necessities, "the circumstances, nature and

6    duration of a deprivation of these necessities must be considered in determining whether a

7    constitutional violation has occurred." Johnson, supra, at 731.

8        The Ninth Circuit, in concluding that safety hazards, exacerbated by poor or

9    inadequate lighting, pervaded a Washington penitentiary's occupational areas, "seriously

10   threaten[ing] the safety and security of inmates and creat[ing] an unconstitutional infliction of

11   pain," has stated:

12           Persons involuntarily confined by the state have a constitutional
             right to safe conditions of confinement.  See Youngberg v. Romeo,
13           1982, 457 U.S. 307, 315-16, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28;
             Santana v. Collazo, 1 Cir., 1983, 714 F.2d 1172, 1183 [1983].  Not
14           every deviation from ideally safe conditions amounts to a
             constitutional violation, see, e.g., Santana at 1183.  However, the
15           Eighth Amendment entitles inmates in a penal institution to an
             adequate level of personal safety.  This is required because
16           inmates, by reason of their confinement, cannot provide for their
             own safety. Santana, supra, 714 F.2d at 1183.  See also Estelle v.
17           Gamble, 1976, 429 U.S. 97, at 103-04, 97 S.Ct. 285, 290-91, 50
             L.Ed.2d 251.

18

19   Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985); see also, Osolinski v. Kane, 92 F.3d

20   934, 938 (9th Cir. 1996).

21       Prisoners alleging Eighth Amendment violations based on unsafe conditions must

22   demonstrate that prison officials were deliberately indifferent to their health or safety by

23   subjecting them to a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. at 833, 114 S.

24   Ct. at 1977.  "For a claim ... based on a failure to prevent harm, the inmate must show that he is

25   incarcerated under conditions posing a substantial risk of serious harm."  Id. at 834, 114 S. Ct. at

26   1977.  The prisoner must also demonstrate that the defendant had a "sufficiently culpable state of

1   mind." Id.  This standard requires that the official be subjectively aware of the risk; it is not

2   enough that the official objectively should have recognized the danger but failed to do so.  Id. at

3   838, 114 S. Ct. at 1979.  "[T]he official must both be aware of facts from which the inference

4   could be drawn that a substantial risk of harm exists, and he must also draw the inference."  Id. at

5   837, 114 S. Ct. at 1979.  "[A]n official's failure to alleviate a significant risk that he should have

6   perceived but did not...."  does not rise to the level of constitutionally deficient conduct.  Id. at

7   838, 114 S. Ct. at 1979.  "[I]t is enough that the official acted or failed to act despite his

8   knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

9   obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

10  1981.  However, obviousness per se will not impart knowledge as a matter of law.

11          "[D]eliberate indifference entails something more than mere negligence...[but] is

12  satisfied by something less than acts or omissions for the very purpose of causing harm or with

13  knowledge that harm will result."  Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005),

14  quoting Farmer, supra, 511 U.S. at 835, 114 S. Ct. 1970.  Prison officials display a deliberate

15  indifference to an inmate's well-being when they consciously disregard an excessive risk of harm

16  to that inmate's health or safety.  Farmer, 511 U.S. at 837-838, 114 S. Ct. at 1979-80.

17          In Osolinski v. Kane, supra, 92 F.3d 934, a prisoner brought a § 1983 action

18  claiming that the failure of prison officials to repair an oven, the door of which fell off and

19  burned his arm, violated the Eighth Amendment.  In Osolinski, the Ninth Circuit found that it

20  was not clearly established that a single defective device, without any other conditions

21  contributing to the threat of an inmates' safety, created an objectively insufficiently inhumane

22  condition sufficient to be violative of the Eighth Amendment.  92 F.3d at 938.  In reaching this

23  finding, the Ninth Circuit noted the following several cases which held that minor safety hazards

24  did not violate the Eighth Amendment.  Id.  In Tunstall v. Rowe, 478 F. Supp. 87, 89 (N.D.Ill.

25  1979), the existence of a greasy staircase which caused a prisoner to slip and fall and injure his

26  back did not state a constitutional claim under the Eighth Amendment because prison officials

1  are not under a constitutional duty to assure that prison stairs are not greasy.  In <u>Snyder v.</u>

2  <u>Blankenship</u>, 473 F. Supp. 1208, 1212 (W.D.Va. 1979), the failure to repair a leaking dishwasher

3  which resulted in a pool of soapy water in which prisoner slipped, injuring his back, did not

4  violate the Eighth Amendment as "a slip and fall injury is not comparable to a prison-related

5  injury, such as harm caused by the assault of fellow inmates, for example."  In <u>Robinson v.</u>

6  <u>Cuyler</u>, 511 F. Supp. 161, 163 (E.D.Pa. 1981), the court found that where a prisoner slipped on a

7  wet floor and was burned by the contents of an overturned pot an Eighth Amendment violation

8  was not stated as "[a] slippery kitchen floor does not inflict 'cruel and unusual punishments.'"

9  In <u>Osolinski</u>, 92 F.3d at 938-939, the Ninth Circuit also distinguished the facts of a Second

10  Circuit case, <u>Gill v. Mooney</u>, 824 F.2d 192, 195 (2d Cir. 1987), wherein plaintiff survived a

11  motion to dismiss on a claim of an Eighth Amendment violation, where plaintiff averred that

12  defendant had ordered him to continue working on a ladder after plaintiff had told defendant it

13  was unsafe, because "[t]he order to remain on the ladder in <u>Gill</u> exacerbated the inherent

14  dangerousness of the defective ladder, rendering the ladder a serious safety hazard, akin to those

15  found in <u>Hoptowit</u>."[13]

16      Furthermore, the Ninth Circuit has stated flatly that slippery prison floors do not

17  set forth a constitutional violation.  <u>Jackson v. State of Ariz.</u>, 885 F.2d 639, 641 (9th Cir. 1989)

18  (superseded on another ground) (inmate's complaint about slippery prison floors does not state

19  even an arguable Eighth Amendment violation), citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349,

20  101 S. Ct. 2392, 2400 (1981) ("the Constitution does not mandate comfortable prisons....").

21      On the other hand, the Ninth Circuit has also found that slippery floors without

22  protective measures could constitute a condition of deliberate indifference.  <u>Frost v. Agnos</u>, 152

23  F.3d 1124, 1129 (9th Cir. 1998), citing <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993)

24  (inmates entitled to protection from unsafe prison conditions).  In <u>LeMaire</u>, while the Ninth

25  

26      [13] See <u>Hoptowit v. Spellman</u>, <u>supra</u>, 753 F.2d 779.

14

1   Circuit found that an injunction could be issued to protect inmates from unsafe conditions before

2   a serious injury had occurred, the court nevertheless stated that "shackling a dangerous inmate in

3   a shower" does not create a "sufficiently unsafe condition[,] [e]ven if the floors to the shower are

4   slippery and LeMaire might fall while showering...." quoting <u>Jackson</u>, <u>supra</u>, 885 F.2d at 641

5   ("'slippery prison floors...do not state even an arguable claim for cruel and unusual

6   punishment.'")

7         In <u>Frost</u>, by contrast, the inmate was disabled and on crutches, had fallen and

8   injured himself several times on slippery shower floors; prison guards were aware of this, and

9   plaintiff had submitted several grievances to jail officials, advising them of the risk he faced. 152

10   F.3d at 1129.  Moreover, a prison doctor had stated that Frost should be placed in the

11   handicapped unit, but prison officials had failed to accommodate him.  <u>Id.</u>

12       *<u>Discussion</u>*

13         *<u>Defendants Johnson, Tuggle, Ramirez, and Cordero</u>*

14         Plaintiff's claim appears to be that the kitchen floors, routinely and dangerously

15   wet, in the FSP kitchen, combined on September 4, 2003, with the defectively attached and/or

16   improperly monitored high pressure hot water hose, to cause plaintiff a serious injury.  Plaintiff

17   has not indicated that either of these conditions alone would have resulted in his injury; that is,

18   presumably, if the floors had not been wet, plaintiff would not have slipped and fallen as he

19   jumped to get out of the way of the hot water rushing from the high pressure water hose that

20   became detached and allegedly began spraying wildly.  It would appear that the high pressure hot

21   water hose even without the unidentified safety device plaintiff believes should have been

22   installed to prevent the hose's detaching would not have become a threat to plaintiff if the inmate

23   in charge of monitoring it had not apparently wandered off.   The question then becomes whether

24   or not plaintiff has shown, in the face of defendants' motion, there is a material issue of fact in

25   dispute with regard to whether any of the defendants were deliberately indifferent in violation of

26   the Eighth Amendment by, as to defendants Johnson, Tuggle, Ramirez, and Cordero, having

essentially admitted awareness that the kitchen floors were wet, having conceded that they were

unaware (even possibly indifferent to) the need for a safety device for the water hose; and having

failed to adequately supervise the inmate who allegedly should have stood by monitoring the

filling of the dishwasher tank with hot water.

The problem for plaintiff is that although he made some effort through

discovery,[14] he has failed to make a sufficient showing that the defendants were on notice of the

conditions in the kitchen that plaintiff has alleged to be unsafe, by, for example, showing that

prior notice of the unsafe conditions of which he complains, including the wet floors, the high

pressure water hose without a safety device, the lack of monitoring of the filling of the

dishwashing tank, had been provided in the form of his or other prior inmate grievances or prior

inmate or employee accidents or injuries.  It appears to have been an unfortunate synergy that

occurred when the concededly, and not unexpected, often wet floors of the kitchen combined

with what appears to have been the unusual event of the detaching of the dishwashing tank's high

pressure water hose which happened just at the period of time when an unidentified inmate,

apparently assigned the task of monitoring the tank-filling, was not doing his job, all this

occurring when no defendant was present and supervising the scene, so as, for example, to see to

it that the inmate assigned to the oversee the tank-filling did not leave his post.[15]

Plaintiff does not point to prior instances of the hose having detached in this, or

any, manner.  That institutional kitchen floors may be wet, particularly around dishwashing areas,

---

[14] Plaintiff also alleges that the dishwashing equipment manufacturer, not a party to this suit, was negligent in product safety and contends that he has sought the identity of the manufacturer through discovery so that the manufacturer might be added to the suit on a product liability claim.  Plt.'s Dec. Opp., p. 10.

[15] The undersigned has considered the relatively simple "fix" for slippery kitchen floors, i.e., rubber meshed floor matting.  The record does not reflect consideration of such mats, and the undersigned assumes such matting was not in place.  In light of Jackson and Osolinski, however, the undersigned cannot find that the failure to alleviate slippery floors with an assumed simple fix, even in a prison environment, at least in the absence of extraordinary circumstances such as in Frost, will state a cognizable Eighth Amendment claim.

1   cannot rise to the level of an Eighth Amendment violation.  Defendants point out that inmates

2   and correctional staff worked in the culinary area for long periods every day without incident and

3   argue that towels and mops are available for the inmate staff to clean up spills or water

4   accumulation.  Reply, p. 4.  The failure of any of the defendants to be present in the kitchen

5   monitoring inmate staff at every moment, or the particular moment at issue, makes out, at most, a

6   case of negligence, not deliberate indifference, on the part of defendants Johnson, Tuggle,

7   Ramirez, and Cordero, and there is no Fourteenth Amendment due process claim to the extent

8   that plaintiff's claims the actions of these defendants were negligent.  Daniels v. Williams, 474

9   U.S. 327, 328, 106 S. Ct. 662 (1986) ("we conclude that the Due Process Clause is simply not

10  implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or

11  property." [Emphasis in original]).

12        Defendants cite Morgan v. Morgensen, 465 F.3d 1041 (9th Cir. 2006), and Wallis

13  v. Baldwin, 70 f.3d 1074 (9th Cir. 1995), (MSJ, p. 5), as support for the principle that both the

14  objective and subjective components, articulated in Farmer, supra, which must be evaluated to

15  determine a defendant's "deliberate indifference" to the health and safety of an inmate, applies in

16  cases involving inmate claims of on-the-job prison injuries.  To the extent that defendants seek in

17  their reply (p. 4) to assert that plaintiff was not compelled to take the kitchen assignment but did

18  so of his own accord, Morgan does not favor their position insofar as therein the Ninth Circuit

19  found that that plaintiff, injured by a defective printing press while working at a prison job for

20  which he had voluntarily applied, did not thereby waive his Eighth and Fourteenth Amendment

21  rights by taking the print shop job and had not applied "to work with a dangerously defective

22  printing press."  Id., at 1043, 1045.  On the other hand, in that case, that plaintiff, prior to his

23  injury, had informed defendant of the precarious condition of the printing press but defendant,

24  indicating an urgent printing project, went ahead and ordered plaintiff to be careful but continue

25  to work on it.  Id., at 1044,1047.  In affirming the district court, which had denied defendant's

26  summary judgment motion on the basis of qualified immunity, a defense which defendants herein

do not raise, the Ninth Circuit in <u>Morgan</u> noted that the plaintiff therein had previously alerted

the defendant supervisor of the dangerously defective equipment at issue, but had nevertheless

been ordered by that defendant to continue working on it, thus exacerbating the danger,

constituting an Eighth Amendment violation.   <u>Morgan</u>, <u>supra</u>, at 1047, citing, <u>Osolinski</u> and its

discussion of <u>Hoptowit v. Spellman</u>, 753 F.2d 779, <u>Gill v. Mooney</u>, <u>supra</u>, 824 F.2d 192.   In

<u>Osolinski</u>, 92 F.3d at 938-939, as noted, the Ninth Circuit distinguished the facts of <u>Gill</u>, <u>supra</u>,

824 F.2d at 195, wherein plaintiff was placed in a situation regardless of the inherent

dangerousness of which defendant had been informed, the Second Circuit finding that plaintiff

had framed a colorable claim of deliberate indifference against the defendant where plaintiff

alleged that he had told that defendant that the ladder he was using to paint was unsafe but the

defendant nevertheless ordered plaintiff to continue working.  <u>Id.</u>, at 195.  Similarly in <u>Wallis v.</u>

<u>Baldwin,</u> 70 F.3d at 1075-77, the Ninth Circuit found deliberate indifference where plaintiff

presented specific evidence that defendants knew of the existence of asbestos in the facility attics

and dangers posed by it but nevertheless assigned plaintiff to clean the attics without protection

from exposure to the asbestos, remanding the matter for trial.

   In the instant action, plaintiff has not demonstrated that the defendants had been

specifically alerted to the need for a safety device to hold the hot water pressure hose in place.  In

fact, even though plaintiff may find the procedure wanting, it does not appear that having

someone hold down the hot water hose manually in any way implicates the Eighth Amendment,

so long, of course, as that job is actually generally properly monitored and carried out.  While it

is a logical inference that the hose was not being properly monitored at the time it tore free

causing plaintiff to jump out of the way and then slip on a wet floor, it also does not implicate the

Eighth Amendment where plaintiff cannot show that this was anything but an unusual and

unfortunate set of circumstances indicating at most negligence on the part of these defendants.

   Nor does plaintiff's reliance on alleged OSHA violations, i.e., that the wet floors

or dishwasher hose constituted a "recognized hazard" under OSHA, assist him in making out his

claim under the Eighth Amendment.  California Occupational Safety and Health Act of 1973 was

"enacted for the purpose of assuring safe and healthful working conditions for all California

working men and women by authorizing the enforcement of effective standards, assisting and

encouraging employers to maintain safe and healthful working conditions, and by providing

research, information, education, training, and enforcement in the field of occupational safety and

health."  Cal. Labor Code § 6300 (et seq.).

   The overarching federal law, upon which plaintiff appears to rely, the

Occupational Safety and Health Act, (OSHA),[16] at 29 U.S.C. § 654, requires an employer to

provide employees with "a place of employment...free from recognized hazards that are causing

or are likely to cause death or serious physical harm to his employees" and "shall comply with

occupational safety and health standards promulgated under this chapter. § 654(a)(1 & 2).  Under

§ 654(b), employees are directed to comply with OSHA standards and the applicable OSHA

"rules, regulations and orders...."

   OSHA provides that employees who believe there is a safety or health standard

violation "that threatens physical harm, or that an imminent danger exists, may request an

inspection by giving notice to the Secretary or his authorized representative of such violation or

danger."  29 U.S.C. § 657(f)(1) (in part).  Upon the filing of an appropriate notice, the Secretary

determines whether "there are reasonable grounds to believe that such violation or danger

exists..." he is to make a special inspection to determine if there is a danger or violation.  Id.

   If a requirement of § 654 or of a rule, order or standard pursuant to § 655, is

believed to have been violated, a citation is issued to the employer in writing, spelling out the

nature of the violation, the citation is posted, and a reasonable time afforded to abate the

violation.  29 U.S.C. § 658(a)&(b).  Upon the filing of a petition by the Secretary, the federal

district court has jurisdiction "to restrain any conditions or practices in any place of employment

_____

[16] 29 U.S.C. § 651 et seq.

1  which are such that a danger exists which could reasonably be expected to cause death or serious

2  physical harm immediately or before the imminence of such danger can be eliminated through

3  the enforcement procedures otherwise provided by this chapter."  29 U.S.C. § 662 (in part).

4          Even if plaintiff could demonstrate that an OSHA regulation had been violated,

5  which he has not, nothing about the federal OSHA statutes indicates that they can serve as the

6  basis for a claim by a prisoner of a violation of his Eighth Amendment rights, although an

7  employee who is injured by a failure of the Secretary to petition the court for injunctive relief, if

8  arbitrary or capricious, "might bring an action against the Secretary" in the appropriate U.S.

9  district court.  29 U.S.C. § 662(d).  Plaintiff makes no demonstration that what he perceived as

10  violations of OSHA actually resulted in any such formal findings against FSP or prison officials

11  there.  Moreover, "complete compliance with the numerous OSHA regulations" has not been

12  found to be required under the Eighth Amendment.  French v. Owens, 777 F.2d 1250, 1257 (7th

13  Cir. 1985), citing Hoptowit v. Ray, 682 F.2d 1237 (9th Cir. 1982).

14          Plaintiff also seeks to link the "direct negligence" of prison officials to his having

15  allegedly suffered negligent medical treatment.  Plt.'s Dec. Opp., pp. 11-12.  Defendants are

16  correct that his medical treatment is not at issue in this complaint, contending that plaintiff has

17  other actions pending on those claims.  Reply, p. 7.  The motion for summary judgment as to

18  defendants Johnson, Tuggle, Ramirez, and Cordero should be granted.

19          *Defendant Butler*

20          In this suit against defendant Butler for money damages (i.e., in her individual

21  capacity), plaintiff points to defendant Butler's declaration wherein she admits (in her former

22  capacity as warden at FSP), to having had the general responsibility to oversee and implement

23  the various policies and procedures at FSP.  Plt.'s Opp. Dec., pp. 8-9; MSJ, Butler Dec. ¶ 4.

24  While defendant Butler does acknowledge that she had such overall responsibility, she maintains

25  that she was not directly involved in the incident at issue, that associate wardens below her had

26  responsibility for overseeing particular prison areas or operations, that she was not personally

1  involved in formulation or implementation of kitchen safety policies or procedures, that she was

2  unaware of any hazardous conditions in the kitchen's premises or conditions.  MSJ, Butler Dec, ¶

3  4.  Plaintiff states that the (now former) defendant warden is sued because as a high-ranking

4  official "she is in a better position than plaintiff to identify officials who were actually

5  responsible for violating plaintiff's rights."  Plt.'s Opp. Dec., pp. 8-9.  However, the time is long

6  passed for plaintiff to identify any other of those officials that he seeks to name as defendants.

7          Plaintiff does not demonstrate that defendant Butler was personally involved in

8  any alleged constitutional deprivation.   Section 1983 requires that there be an actual connection

9  or link between the actions of the defendants and the deprivation alleged to have been suffered by

10  plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978); Rizzo

11  v. Goode, 423 U.S. 362, 96 S. Ct. 598 (1976).  "A person 'subjects' another to the deprivation of

12  a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in

13  another's affirmative acts or omits to perform an act which he is legally required to do that

14  causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th

15  Cir. 1978).

16          Defendants argue that "[t]here is no respondeat superior liability in § 1983

17  actions."  Reply, p.6.  It is correct that supervisory personnel are generally not liable under

18  § 1983 for the actions of their employees under a theory of respondeat superior and that there

19  must be shown to be a causal link between that person and the claimed constitutional violation.

20  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441

21  (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Moreover, as set forth above, the undersigned

22  has found that plaintiff has not raised a material fact issue as to whether the Eighth Amendment

23  is even implicated in light of the facts and issues raised.   The motion for summary judgment

24  should be granted as to this defendant.

25          Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for

26  summary judgment, filed on December 10, 2008 (docket # 35), be granted, and judgment be

1    entered for defendants.

2          These findings and recommendations are submitted to the United States District

3    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

4    days after being served with these findings and recommendations, any party may file written

5    objections with the court and serve a copy on all parties.  Such a document should be captioned

6    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

7    shall be served and filed within ten days after service of the objections.  The parties are advised

8    that failure to file objections within the specified time may waive the right to appeal the District

9    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10   DATED: July 28, 2009                          /s/ Gregory G. Hollows

11                                                 _____
                                                   UNITED STATES MAGISTRATE JUDGE

12   GGH:009
     tyle0861.msj

13

14

15

16

17

18

19

20

21

22

23

24

25

26